**LISA SCOLARI**
**Attorney at Law**
**20 Vesey Street,  Suite 400**
**New York, New York 10007**
**lscolarilaw@earthlink.net**

TEL 212-227-8899                                                                                          FAX 212-964-2926

November 12,  2018

Honorable Alison J. Nathan
United States District Court
Southern District of New York
500 Pearl Street
New York,  N.Y. 10007
*via ECF*

### Re: United States  v. Nicole Munderville,
17 Cr. 339 (AJN)

Your Honor:

Nicole Munderville is a thirty six year old woman who has  struggled with an opioid addiction for several years. Her addiction escalated dramatically, becoming the focus of  Nicole's  life, when she became dependent on heroin in 2014. However, for nearly a year, since December, 2017,  Nicole has worked diligently to  recover from that addiction in the residential drug treatment program at  Samaritan Village in Rhinebeck. Nicole has shown remarkable insight during her time in Samaritan and has thrived in treatment. In addition to learning the causes of and tools to deal with her illness,  Nicole has became a leader and inspiration for other women in the program.

*Plea, guidelines and probation recommendation*

Nicole  plead guilty  to drug conspiracy, has qualified for the safety valve, and faces a 37-46 month sentence under her plea agreement. 21 USC §841(b)(1)( C).  There is no mandatory minimum and, as the Court is aware, the guidelines are not binding. The pre-sentence report  recommends that the Court sentence Nicole to time served and three years of supervised release, with the special conditions that she continue in the residential program until completion followed by entry into Samaritan-Daytop's re-entry program.  Nicole spent approximately six months in jail prior to being released to the program.  We respectfully suggest that under sentencing statute, specifically the directive that the Court impose a sentence "no greater than necessary", that the sentence recommended by the probation department is sufficient to comply with the purposes set forth in that statute. 18 USC §3553(a)

*The Nature and Circumstances of the Offense*

Nicole was the least involved participant  in the conspiracy and her involvement was solely driven by her need for heroin.  She assisted her mother Teresa Keefe and step-father Robert Diaz in order to get drugs. Unlike other people who were more involved, Nicole never received any money for what she did. She helped Diaz obtain a fentanyl connection without fully understanding the seriousness of her conduct. Nicole's addiction was such that she herself was using fentanyl and she thought of it as a "stronger version" of heroin. After her arrest, when she was no longer in the desperate throes of her need for drugs, Nicole realized that she was lucky to be alive because of the often deadly result of fentanyl use.

*Nicole Munderville's History and Character*

Nicole's childhood was marred by her mother Teresa Keefe's drug addiction. Before her parents divorced Nicole was exposed to a significant amount of drug and alcohol abuse. After Nicole's parents divorced when she  was eight, her father Robert Munderville obtained sole custody. Although she loved her father, Nicole was confused and hurt by her mothers absence. Nicole thought she had somehow cause her mother to abandon her. Despite being raised in a stable home with her father and step-mother, Tabitha Munderville,   Nicole longed for a relationship with her mother.

Nicole had a glimpse of the relationship she might have had with Keefe when Nicole was eighteen. Keefe was sober for a few years after giving birth to Nicole's half sibling Raquel. Nicole give  birth to her daughter,  Angelica around the same time and for a while  they all lived with Nicole's  maternal grandparents in Myrtle Beach. But, Keefe's sobriety did not last. She disappeared once again, abandoning her young daughter Raquel,  Nicole and  her granddaughter Angelica. Nicole's contact with her mother was sporadic after that.

Keefe's claims that she "maintained a presence" in Nicole's life and that they were "close" demonstrate her total lack of awareness of the toxic effect she had on Nicole. (PSR ¶ 75) It is almost laughable that Keefe claimed some responsibility for "placing" Nicole in drug rehab for opiate addiction. Nicole's only prior effort at getting clean was a disaster because she became addicted to the heroin substitute suboxone. Suboxone maintenance, much like methadone maintenance,  is designed to defeat the cravings for the heroin but rather than helping an addict get clean, it simply substitutes a legal dependence for an illegal one. When Nicole's insurance lapsed and she couldn't get suboxone, she became sick and panicked.  In her illness Nicole turned to Keefe who "*helped*" her daughter  by giving Nicole her first taste of heroin. As Nicole told probation, she "fell in love" with heroin, starting the disastrous downward slide that ended in her arrest on this case.

2

*Exceptional rehabilitation*

From the moment of her arrest,  Nicole has been brutally honest about her drug addiction. She recognized that she had been so consumed with her need for heroin that she disregarded the very real danger of overdosing on fentanyl. She has  expressed gratitude for her arrest as she could not get off her deadly  path without it.  In her safety valve proffer, Nicole evinced such a  sincere desire to get clean, that the prosecution agreed to her release to inpatient drug treatment. In the program, Nicole has shown that their confidence was more than merited.  She has embraced her arrest as an opportunity to change her life with unmatched devotion  and passion. Her letter speaks eloquently of what she has learned and her determination to stay sober. (Exhibit A). Both Nicole's father and step-mother have lived through her years of addiction and prior false starts at rehabilitation. Their letters are filled with confidence that Nicole has finally committed to sobriety, that her work in the program has given them "their daughter" again. (Exhibit B)

Nicole is deeply ashamed of the things that she did to get heroin. But nothing hurts more that her inability to care for her daughters. Nicole knows that she has failed them as Keefe failed her. Slowly,  through family meetings at Samaritan, Nicole has begun to rebuild a relationship with both girls. She has not asked either daughter or their caretakers to write letters as she did not feel it was fair to do so. She is so grateful that the girls are willing to consider reconnecting with her and for the love their caretakers have given them. At this point, she does not want to ask for more than the opportunity to be a part of their lives.

The letter from Nicole's Counselor at Samaritan attests to her accomplishments, which go well beyond working on her own sobriety. (Exhibit C) More remarkable  are the letters submitted by several women who have been in Samaritan with Nicole. In more than thirty seven years of defense work, with hundreds of clients in drug rehabilitation programs, I have never seen letters like this. "Nicole is the heart and soul of the Meadow Run Facility", "Her dedication to sobriety...gives me hope and inspiration", "[S] has taught me resilience, compassion, persistence and accountability...", "Nicole is the power of example...for the entire community". (Exhibit D)

Through Samaritan Nicole has not only found sobriety, but what she believes is her life's work. She wants to become a peer counselor, someone who will work with and help others achieve what she has–a lifetime devotion to a healthy, drug free future. The letters written by Nicole's counselor and fellow program attendees demonstrate that she is amazingly well suited for the work.  Through the Samaritan-Daytop re-entry program and continued work thereafter, she will surely reach that goal. It is axiomatic

that helping others helps oneself. Working to help others remain drug free with have an inevitable impact on Nicole's ability to stay clean herself.

> *The need to "reflect the seriousness of the offense", "provide just punishment" "provide adequate deterrence" and protect the public*

The "seriousness of the offense" and "just punishment" clauses are the only 18 USC §3553(a) factors that suggests additional incarceration is necessary. However, the Supreme Court has recognized that probation is a substantial restriction of an individual's freedom. *Gall v. United States,* 552 U.S. 38, 48 (2007). *United States v. Knights*, 534 U. S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting *Griffin v. Wisconsin*, 483 U. S. 868, 874 (1987)) Probationers are required to adhere to multiple standard conditions. They may not leave the district, move, or change jobs without receiving permission from their probation officer and sometimes the court. They must report regularly to their probation officer, permit unannounced visits to and possible searches of their homes, refrain from associating with any person convicted of a felony and engage in required pursuits such as attending school or working.

If the Court were to sentence Nicole as probation recommends, she would be subject to significant special conditions. Specifically, she would be required to continue to live in supervised housing, the Samaritan-Daytop re-entry program which could continue for an additional six months. Therein, she will be drug tested and helped to find a job and housing. Even after completing the re-entry program, Nicole surely will be required to continue with outpatient follow up and subjected to drug testing for the duration of her supervised release.

The six months that Nicole spent in MCC before she was released into Samaritan were more than adequate deterrence. Besides being deathly ill during her detoxification, she was locked up with her mother, whose lack of insight into her own addiction continued to have a toxic impact on Nicole. There is good reason to believe that the determination and devotion that Nicole has shown in Samaritan will continue when she is in the re-entry program. Her embrace of the way in which the program helped her and her plan to train as a peer counselor portends a positive future. If Nicole is able to work at helping other to recover from drug addiction she will be working to protect the community from the

4

criminal conduct that often follows addiction.

Myriad studies have  indicated that treatment, rather than incarceration, is the only effective way to help an addict avoid relapse and re-offending.  A 2018 Pew Charitable Trust study found that higher rates of incarceration do not deter drug use, drug distribution and other drug law violations.[1]  A 2013, RTI International and Temple University study indicated that billions in criminal justice costs would be saved by treatment instead of incarceration.[2]  In 2010 Attorney General Eric Holder spoke about the success of drug courts and treatment as an alternative to prison.[3]

In this case, treatment has brought about a dramatic change in Nicole's life. In addition having a real expectation of a normal,  healthy future, Nicole has experienced the joy of re-establishing relationships and regaining the trust of people she loves. She is particularly inspired by the  desire to have a strong positive connection with her daughters. These powerful motivating factors will undoubtedly help Nicole to maintain her sobriety.

For all of the foregoing reasons, we respectfully request that the Court sentence Nicole Munderville to time served and probation, with specific conditions recommended in the pre-sentence report.


Respectfully,

*Lisa Scolari*

Lisa Scolari

---

[1] *More Imprisonment Does Not Reduce State Drug Problems*, Pew Charitable Trust March 3, 2018 (Exhibit E)

[2] *Study: Replacing Prison Terms with Drug Abuse Treatment Could Save Billions in Criminal Justice Costs*, RTI International and Temple University, January 8, 2013 (Exhibit F)

[3] Attorney General Eric Holder Speaks at the National Association of Drug Court Professionals 16th Annual Conference, June 3, 2010 (Exhibit G)